Good morning, Your Honors. May it please the Court, my name is Dee Yarnell. I represent the plaintiffs, both the tort victims, the original tort victims, Zhigalian and Malikian, as well as the insured, Mrs. Nantes, against New London Insurance. Your Honors, this case involves both aspects of jurisdiction, as I'm sure you're aware from reading the briefs, I think it's well done. I just would like to point out just a couple of, emphasize a couple of things. As far as subject matter jurisdiction, it seems to me that this is a classic case of statutory interpretation, well settled back to the Horton Opinion of the U.S. Supreme Court written by Justice Black back in 1958, where he makes clear when this statute, this diversity statute, was originally amended for the purpose of cutting back on diversity jurisdiction, for the purpose of reducing congestion in the federal court, that Congress, at that time, determined that it would restrict, in that case, it was particularly for workers' comp, prohibiting removal of workers' comp cases to the federal court. And Justice Black wrote, you know, we must assume the intent of Congress based on the languages stated. And that did not specifically address the issue we have here, but Northbrook did. And in that case, Justice Marshall, relying on Horton directly, that same quote, stated, the only where an action is against an insurer under 1332C will this prohibition of, you know, the desire to destroy diversity, you know. But Northbrook holds that question open. In Code Note 1, it says, we don't need to address the question whether this argument, the direct action, is only where the injured party neither joins nor first obtains a judgment against the legally responsible party. But we've addressed it in Beckham. And so the Supreme Court is asking, it brings me exactly to my next point. The Northbrook case stated that in Footnote 1. Why they weren't deciding it? Because it was not necessary to the opinion. And it would have been dicta, which would have been inappropriate, when Congress had spoken. But that was not at issue. That definition was not at issue. Neither was it at issue in Beckham. But in the Ninth Circuit, our dictum is binding on the courts. That's Ferrapendi-Inomoto. So regardless of whether it's dicta or not dicta in somebody's judgment, we're bound by that language. Well, the U.S. Supreme Court has stated that that should not be the case. Well, the Supreme Court has stated that about its own dicta. In the Ninth Circuit, though, we've stated that our dicta is binding on subsequent panels. So the Supreme Court is not binding. So we're bound by it. Well, Your Honor, I would respectfully ask the Court to reconsider it, to review Beckham, because it's not fair. And I think that it is technically a violation of separation of powers if you add an element to language that Congress, a co-equal branch, has developed for the purpose of its ability under the constitutional right to ordain and establish federal courts. It has a certain amount of co-equal power to control what happens in federal courts. And that goes to its power over funding of federal courts and on all aspects of that check and balance between the two branches. Well, even if we were to agree with you, we would have to go en banc if we did not follow Beckham. This panel would not have the power to do that. I would ask this Court to do exactly that, just like in Passereau. Maybe that's what we would have to do. I would definitely ask this Court to do exactly that, just as in Passereau, where the word any was so important, both to the majority and the dissent, that, you know, I'm sure you know what I'm talking about in that strict statutory construction context. It seems to me that there's no reason to add an element to what Congress clearly stated. Do we have a liability insurer? Yes, we do. Is this an action, a direct action, by every label ever given to 11-580? Not by Beckham. I mean, in other words, the phrase direct action is not defined in 1332. Another panel of this Court undertook to define what direct action meant. It has been repeated after Beckham. It was repeated in Searles. So I don't see how we could avoid that definition of direct action. And would you agree if Beckham, if we're bound by Beckham, then the state statute here is not a direct action? I would concede if I agree that Beckham actually defined it that way. If you look at the section that actually discusses the statute, it does not define it that way, Your Honor. At that page, in the opinion of Beckham, it simply states an action by the tort victim against the carrier where the defendant is not named as a party defendant. It's only at the very beginning of the case, sort of as a casual mention of the statute, does it add that language. I don't think it was even an effort to actually define that statute, because it was very clear that there was no direct action there. Aside from the problems you have from Beckham, didn't the injured parties knock themselves out, so to speak, when they took an assignment from the insured? No, I would say not, Your Honor, because there's nothing in the statutory language of 1332C that says if there's a combination of another cause of action, such as a bad faith case, combined with a direct action, that you now get to have federal court jurisdiction. The statute says any direct action. Clearly, this is an 11-580 action. It's the main case. They recovered under a binding arbitration, and leading me into the next, I need to get to my personal jurisdiction discussion. Clearly, there was an injury in Connecticut where the effects of the failure to defend in the policy that resulted in the $23 million judgment all occurred here in California. Can you tell us what the status is of the Connecticut case? I certainly can, and Your Honor, I even brought it with me in my mail. Just a moment. The Connecticut Supreme Court agreed on March 16th of 2011 to hear the matter directly instead of it going through the intermediate appellate court. And I apologize for not having done a separate request for judicial notice, but Your Honors, if I may do so, I would be happy to file that within So it's still pending on appeal? It is. And the Connecticut Supreme Court has determined that whether or not it was a proper declaratory relief matter is appropriately to be heard as a matter of first impression to the Supreme Court there. And I can leave a copy of this with the clerk if you'd like. So they granted review on the procedural issue, whether it was a proper declaratory relief or on the interpretation of the insurance contract? There was no adjudication. It's taken up on all issues. It was taken up on all issues. Basically, just the Connecticut Supreme Court is going to hear the matter directly. Well, it would be useful to have you give a copy. You should have a copy for your opposing counsel. We'll leave it with the clerk. I would be happy to do that. I'm sure he has one because they're involved in that case as well. If I may interrupt on that, we've already given a request for judicial notice where we've submitted the notice of appeal on that issue. Right. It will be necessary. This is the order accepting it to the Supreme Court. Your Honors, if I may turn then to the personal jurisdiction issue. Again, there's a fundamental public policy at issue here. When we have a nationwide coverage clause in a liability policy, that issue has been pretty heavily litigated across the nation with some conflicting results, I will certainly agree. The Ninth Circuit's most recent opinion on this that I think controls here is the Farmers v. Portage case. You might note that the fundamental Supreme Court case is the McGee case where it's a life insurance policy, failure to pay the benefit, and the mother of the insured sued in California. That was basically one failure within the state, failure to pay a benefit, so it was an omission, that was the purposeful availment conduct. That was before the purposeful availment language, but Burger King, I think, is the fundamental case that establishes the vitality of McGee. It relied heavily on McGee when it said even one contact within the farm state can amount to purposeful availment. When there is a strong connection between that failure, in this case it was a life insurance in McGee. But why aren't we just bound by Hunt? I mean, Hunt seems fairly closely on point. Well, I disagree, Your Honor, and I'll tell you why. Hunt was 1984. It involved a case where the accident occurred outside of California, but the defendant never moved to California. The defendant never was sued in California. There was no failure to defend in California. There was no judgment that issued in California. There was no direct action in California. In Portage, in contrast, it was a liability policy where there was a failure to defend in California, and there was a judgment that issued. It was between two insurers seeking the right to recover for the failure to defend. So Hunt is... Let me just ask a question. If we granted you jurisdictional discovery on remand, what kinds of contacts do you think you could uncover? Your Honor, I think that it may be that there have been other situations where New London has defended insurers in other states across the nation. Whether it's California or not is not the sole issue, because the point is that when a liability carrier sells a policy where it agrees to defend anywhere that a suit may be brought against that insured, and the insured moves to California because that's where she was from in the first place. Her home was for sale in Connecticut. She's brain injured by carbon monoxide poisoning. She comes back to California after the incident. All the negotiations and the settlement discussions and all of the claims made is all happening in California. And she's sued in California. There's a failure to defend in California. A judgment issue is here. It seems to me that any time New London has defended any insured anywhere other than Connecticut, it shows the foreseeability and the fairness. They sold a policy and derived an economic benefit from that. Portage clearly notes that when a liability carrier has a contractual duty to defend within the state, that that constitutes purposeful availment and that it's foreseeable and that it's fair. And it's six years after Hunt, and they certainly don't find in the Portage case that Hunt controlled under those facts. And I think our case is much more like Portage than it is like Hunt. If I could just address the King case, which was addressed by a rule, an FRAP rule, what is it, Rule 32 letter. Your Honor, in the King case, the sole question was whether or not a Montana statute that provided for an insurance company contemplating doing business in the state must appoint an agent for service of process. Whether that's enough to constitute purposeful availment within the state. Again, it didn't involve a failure to defend, a duty to defend. It had nothing to do with the facts in Portage. So again, I think it is distinguishable. And in fact, both the majority and the dissent distinguished the Portage case. The majority in its footnote 2 and 10 said, you know, unlike Portage, and they explained why Portage doesn't control. And the dissent relied upon Portage in full, saying it's the fair, foreseeable result that, you know, we expand jurisdiction under Hsu and its progeny. If Hsu, Your Honor, changed the face of jurisdiction from Penoyer versus Knapp territorial rule, because of the advance in transportation and communication and the lessened burden on defendants, I cannot imagine that in today's world of ease of transportation, communication, just the advent of the Internet alone, that we would retract jurisdiction. It's just not fair. Do you want to save some time for rebuttal? I would, Your Honor. Thank you so much. Thank you. Good morning, Your Honors. May it please the Court. I am Paul White on behalf of the respondent New London County Mutual Insurance Company. I would submit the district court got it right here. First, when you address the question of whether or not the motion to remand was properly denied, this court hit it right on the head. Beckham absolutely controls. Searle controls. These are Ninth Circuit precedent that have directly addressed the issue. Counsel made the comment that it was a casual comment in Beckham. If you read Beckham, it's not a casual comment. Just pulling one quote from Beckham, they state, courts have uniformly defined the term direct action as used in this section, section 1332C1, as those cases in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability without joining the insured or first obtaining a judgment against him. That's on page 902 of the Beckham decision. Searle similarly was very clear in saying that a suit against an insurer for bad faiths is not going to qualify as a direct action. It's because when you look at the California statute which allows the direct action or the bringing of a suit against an insurer, it's in the context of if there has first been a suit brought against the insured and a judgment obtained, then without being able to satisfy that judgment against the alleged tortfeasor, the courts have then allowed the claimant to proceed against the insured's insurer. So they then stand in those shoes. So this court hit it right on. Beckham controls on this issue. California refers to its statute, 11-580, as being its direct action statute, and I think some Ninth Circuit cases have even referred to 11-580 as being California's direct action statute. What do we do about that? Some of the case law refers to the direct action, but it's using it more as a general phrase in terms of when an individual or an entity is entitled to sue an insurer directly, because typically they are not going to have privity of contract if it's the claimant going against the insurer. So they address when can the claimant sue the insurer directly. So it gets abbreviated into kind of the term direct action, but the statute makes clear and the case law makes clear that it's not proceeding directly, because California law absolutely requires that they jump through the procedural mechanism of first suing the alleged tortfeasor. So what may get turned into an abbreviated phrase, when you actually review the statute and review the case law, to say it's a direct action, it's the antithesis of a direct action, because there is a procedural mechanism requiring that claimant to first subscribe to the rule that says you need to sue the alleged tortfeasor first, and then you need to obtain a judgment against that tortfeasor, will then allow you to step into the insured shoes and bring suit against the insurer. You know, quite honestly, if I, putting Beckham aside, if I read section 1332C1, it does, here Beckham doesn't appear to follow the plain language in that statute. What is your response? I'm not sure I follow your question, Your Honor. I'm sorry. We say that the language in Beckham was dicta. None of us would follow Beckham, but as I read 1332C1, I did not see in the statute, or the language of the statute, the holding that the dicta and bectum seem to require. Where in section 1332C1 do you find language that leads to the result that you're asking? Well, and that's where I think, Your Honor, Beckham provides the analysis in saying, what do we mean by direct action when we talk about 1332? It's not clear when you read the statute. Would you agree? I think the statute is clear in terms of talking about bringing a direct suit, proceeding against an insurer directly, because it is the circumstance where you forego the right to sue the alleged tortfeasor and sue the insurer directly, and I think that the statute does address that. I'm sorry I don't have the specific language of this statute in front of me, but I believe that it does address that process of foregoing, and that's where Beckham and Searle both looked at it and said, you're foregoing the right, and in California, if you look at 11580 of the insurance code, you do first have to bring suit against the tortfeasor and obtain the judgment against the tortfeasor. All right. Thank you. Similarly, Your Honors, just to address counsel's reference, the Casserer case, which addressed statutory interpretation, just to be real clear on what Casserer was dealing with, it was the expropriation exception to the Foreign Sovereign Immunities Act. So they had a suit against the King of Spain under this Foreign Sovereign Immunities Act where any foreign entity which is alleged to have taken artifacts, goods, et cetera, and the King of Spain as a defendant was saying, we're not the ones who are supposed to have taken this. It was Germany and wanted to apply the statute to be limited to a suit against the entity taking it, and the court came down following normal statutory guidelines, which are nothing new to this court, and said, it says against any entity and Germany is the entity here. Its application here really is of no bearing because we already have guidance from our courts on how this applies. The statute has already been interpreted. It's already been applied by a couple of courts in the Ninth Circuit, and then courts throughout the country have similarly sided with what the Ninth Circuit has done on this issue. The other thing, just to address briefly, Your Honor, on personal jurisdiction, the Burger King Court from the United States Supreme Court and the Schwarzenegger Court from the Ninth Circuit have all advised that there are three steps in evaluating whether or not a party has availed itself for personal jurisdiction. But the key facts to remember here, you've got New London County Mutual Insurance Company in Connecticut utilizing an agent in Connecticut to provide an insurance policy to a Connecticut resident on a home in Connecticut where ultimately what happens is an incident where there's carbon monoxide poisoning arising from the use of a vehicle because the insured left her vehicle on. When you take the steps of what is required for personal jurisdiction, purposefully availing yourself to the jurisdiction is clearly not met. This is a company that has business in relatively few states and does not do business in California. But it sent a letter of brief to the arbitrator, did it not? It didn't. There was no personal appearance, but didn't the company purposely avail itself by sending a letter of brief? A letter of brief would be a very generous term, Your Honor. A letter to the arbitrator because they received a notice from the arbitrator saying we have denied coverage is not, in my mind, a letter of brief. But to take your point, which I think is there is still correspondence provided in the action. So if we get to the question of rising out, that's where the Hunt decision from the Ninth Circuit is dead on in saying that that is not a purposeful availment. They're providing a courtesy to a former California Supreme Court justice in saying this is not covered under our policy. We're not a party to the arbitration. We're not appearing at the arbitration. FYI. And so Hunt, under very similar circumstances, I believe you made the analogy, Your Honor, Hunt said that's going to be insufficient. And then Hunt further explained, because Hunt did involve someone moving to another jurisdiction, and said the unilateral move is not going to be sufficient. If it's the unilateral move, in this case, of a plaintiff to California, that move is not the focus. What we're looking at is New London County's activities. So the fact that we have Nantes, Desgalian, and Malikian all moving to California and entering into an agreement to proceed to an arbitration in California over their Connecticut tort, that's not the focus. It's what is New London County? New London County Insurance Company doesn't do business in California. It's not licensed here. And that's where I think the Keene decision, which came out in January of this year, is somewhat instructive in saying, look, this is a company that was contemplating actually doing business here and assigned an agent for service and process. And under Montana's long-arm statute, the parties were trying to get personal jurisdiction, and the court still came down and said, no, that is still not going to be sufficient because they still had not purposefully availed themselves. Let me ask you about discovery. The appellant asked for discovery, and if it's possible to point out that the company had other contacts here, that that would be possible to discover under discovery, why shouldn't discovery be permitted on the question of personal jurisdiction? Your Honor, a couple of points on that. One, the district court did address the question of discovery once it was presented in the briefs, but I think there's some confusion in the appellate papers in suggesting that perhaps the district court issued some early denial of the right to conduct discovery. I'm not aware of any such denial, or frankly that there's anything in the record where they make that argument to support that. But notwithstanding that, the district court found and referenced that there is a plethora of law that says when the allegations make it sufficiently clear that there are not going to be facts, that the facts support no personal jurisdiction, then the case can be dismissed for a lack of personal jurisdiction. But how do you know? I mean, it's common in a case like that to order discovery limited just to jurisdictional issues. Because, Your Honor, one, you go to the allegations that have been presented, and the district court did look at that. Then with respect to the motion, there were also declarations submitted from New London County Mutual Insurance Company advising of its conduct. So I think, frankly, there was. If they wanted to conduct discovery, I was counsel in that case. I didn't see it come through. So this isn't a matter of them saying, Oh, gosh, you know what? We filed a motion, and counsel for New London County rejected it. They're coming in now and saying, Gosh, you know what? It's Monday morning, and the football game on Sunday is over. Wish we would have done this. Could we? Should we? So there was no discovery request at any time then before the district court? No, Your Honor. But aside from that, I go back to what the district court said as well. This is a situation where the facts actually in front of the district court were abundantly clear that we had a small Connecticut insurance company dealing with a claim in Connecticut arising from all facts in Connecticut. How long has the mutual company been in existence? I think a long time. Most mutual companies are really old. Yeah, I think this is one of them. But I don't remember the exact number of years, Your Honor. I know that at the time we submitted it, I think that they were doing business in five or six jurisdictions or something like that. This is not one of the... What lines does it ride? I think it's got, this is the homeowner's line. They may have an auto line. But I don't really do a lot of work for them, Your Honor. They don't do business in California, which is where I practice, and they ended up getting pulled into this, and here I am. Well, even a small mutual company would be remarkable if it was an old one that wouldn't have had other instances of claims that they would have handled one way or the other in California. You know, Your Honor, even if they did, even if they did, I think that's where Hunt comes down and says, or the international shoe, where they come down and they say, wait a minute, the mere fact, and Hunt dealt with it, I think, pretty clearly, the fact that someone may make a unilateral move from Connecticut to California is insufficient to say, oh, gosh, you know what insurance company? You should have seen it coming. Gotcha. The courts just say that is unreasonable, and that's the third prong of the burger. Not talking about that. Talking about a variety of other claims that they might have entertained over the years in California. What about that as being a part of the jurisdictional stew on personal jurisdiction? And that's what I'm saying, Your Honor. That's where I think Hunt does come down and say, if you're referring to language in a policy that says, we'll defend you, our Connecticut insured, you're referring to say something where someone's driving through the state of California, and they get in an accident, and New London ends up saying, okay, we'll defend you, right? That's where I think Hunt comes down and says, no, this isn't the expectation of an insurer. They were dealing with a similar type policy, and Hunt said that unilateral action by the policyholder isn't the guiding principle here. It's insufficient to say, we're going to say every insurance company that has a clause that says we'll defend you can now be expected to be sued really anywhere. That's where the courts, and the Ninth Circuit in particular, has said it's too much of a stretch. Well, you can expect they're going to have the clause, but that isn't the point. But they didn't explore that in discovery. I would assume that they'd look into the various times their insurers were brought into court that they provided coverage in California, but that wasn't discovered, so that's not in the record. It's not in the record. But again, I go back. Even if it were, it doesn't control because those would be unilateral moves of policyholders. That's not the activity of New London County. It's where the courts say that's... Okay, take it one step further. What about if New London then got sued for bad faith because of however they treated their policyholder in California when they were defending something? Again, I think that would probably still be too much of a reach because you're talking about then communications with a policyholder based on what? A policyholder unilateral move. No, no, that one wouldn't be unilateral. By that time, then, New London would have done something that caused a bad faith claim, allegedly. But I think it's predicated on... And tell me if I'm putting words in your mouth, but I think your hypothetical is still predicated upon a policyholder having left a jurisdiction where New London County does practice business to a jurisdiction like California or some other jurisdiction where they don't do business. And that's where I think the Ninth Circuit comes down and says that's the move of the policyholder. That's a unilateral activity. We're not going to hold the insurer responsible for that activity of its policyholder. Your Honor, with that, I'll rest. Thank you for your time. I'll try to be brief. It's not my strong suit. First of all, Your Honor, Justice Nelson asked the key question regarding the plain language of the statute. The statute clearly says, except that in any direct action against the insurer of a policy or contract of a liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party defendant, such insurer shall be deemed a citizen of the state in which the insured is a citizen. So three elements.  Is it being sued by someone other than just the insured? And where the insured is not named as a defendant? And is it a, quote, direct action? And I think what wasn't stated in the question in the way that it was answered is that even if you want to find that the words direct action are ambiguous, then we use the Kasserer methodology of statutory construction and we go to the intent of Congress, and clearly the 1964 amendment was designed to restrict jurisdiction. So there's no doubt about it. But we have Beckham. If we had an en banc, I believe that the court would follow Justice Nelson's train of thought and say, you know, perhaps this was too... I will still use the word casual. I'd like to quote you from the Beckham case. This is how they begin the discussion. This portion of Section 1332C was enacted in 1964 specifically to eliminate from diversity jurisdiction tort claims in which both the injured party and the tortfeasor are local residents. We have that here. But which, under state, quote, direct action statutes are brought against the tortfeasor's foreign insurance carrier without joining the tortfeasor as a defendant. Period. They don't add the language about getting the judgment first. That's how they begin their discussion. And then they cite various cases. And I am reading from page... Excuse me one second. Naturally I don't see it here. You should start wrapping up because you're over time now. I'm so sorry. All right, I'll be very quick, Your Honor. At any rate, that is... I wanted to point out that we have the independent basis of reason why it should have been remanded is that GEICO did not consent. And GEICO is not a sham or fraudulent joinder here. It's a proper declaratory relief cause of action just like they sued GEICO in Connecticut. They have the right to have segregation equitably for their defense costs. And they have the right to some return from Mrs. Nantes, whereas they try to lump in the other plaintiffs who, of course, have no rights against GEICO, but Mrs. Nantes does. Let me just ask. Is it true there was no request for discovery in the lower court? Your Honor, we didn't only because... We did ask for it in the opposition to the motions, but they were claiming that there was no personal jurisdiction and therefore we would have no right to have discovery against them, that we couldn't compel it and that we didn't have the right to it. So we asked for it in the opposition to our motion, asking the judge to allow it and, you know, continue the motion and let us take the discovery first. And the court, you know, just didn't allow it. It didn't have oral argument, just, you know, ruled on the breeze. Thank you. May I just go to... You're over time now. Thank you. Thank you, Your Honor. This case is submitted. Thank you so much. And we're adjourned. Thank you, Your Honor. All rise. This court is now adjourned.
judges: Piersol, Nelson D. W., Ikuta